UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TONY DOIRELLE LEWIS,

Petitioner,

v.

Case No. 2:12-CV-401
HON. R. ALLAN EDGAR

CATHERINE S. BAUMAN,

Respondent.
_________________________________/

**OPINION & ORDER**

Petitioner filed this *pro se* § 2254 petition for writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights. On February 14, 2011, Petitioner pleaded nolo contendere and was found guilty of criminal sexual conduct in the third degree (MICH. COMP. LAWS § 750.520(d)(1)(a)). Petitioner was sentenced from eighty-five to one hundred eighty months imprisonment. Petitioner remains in the custody of the Michigan Department of Corrections.

After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising both claims currently before this Court. Petitioner's appeal was denied on April 10, 2012, and his conviction was affirmed. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same two claims. The Michigan Supreme Court denied Petitioner's application on September 14, 2012. Petitioner did not appeal the United States Supreme Court or seek collateral review before the trial court. Instead, he filed a habeas petition in this Court on October 18, 2012. Docket # 1.

Petitioner maintains that his convictions were based in violation of his state and

federal rights. Petitioner sets forth the following claims for relief:

> I. Did the trial court abuse its discretion in denying Petitioner's motion to withdraw his nocontest [sic] plea when defense counsel acknowledged that he had provided Petitioner with wrong information such that the plea was not understanding or voluntary, and when the record was devoid of evidence that the People's case would be prejudiced because of reliance on the plea?
>
> II. Did the trialcourt [sic] error [sic] in refusing to re-score OV 4, 10 and 14 based on Petitioner's objections?

Docket ## 1, 3. After filing his § 2254 claim in this Court, Respondent filed an Answer in opposition to Petitioner's request for a writ of habeas corpus. Docket # 9. The matter is now ready for a decision.

I.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law). 28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme

Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). A decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5) it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, this Court concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

II.

Petitioner argues that this Court should grant him a trial because his no contest plea was based on misinformation and his sentencing score was incorrect. This Court reviews both of Petitioner's claims individually.

**A. Nolo Contendere Plea**

Petitioner contends that his guilty plea was not made voluntarily, knowingly, or intelligently. The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a

proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 113 S. Ct. 517, 523 (1992). Here, after a thorough plea colloquy, the trial judge found that petitioner's plea of guilty was entered knowingly and voluntarily:

> Court: How far have you [Defendant] gone in school?
>
> Lewis: Eleventh grade.
>
> Court: So, obviously, you're able to read and understand the English language?
>
> Lewis: Yes, sir.
>
> . . .
>
> Court: Are you currently under the influence of any controlled substance, prescription medication or alcohol that would make it difficult for you to understand me or speak with your attorney Mr. Parish?
>
> Lewis: No, sir.
>
> . . .
>
> Court: It is alleged, sir, that, from approximately January 1st of 2005 to August 31st of 2010, in Berrien County, Michigan, in Count 2, only that you did engage in sexual penetration, penis to vagina intercourse, with [the victim], said person being at least 13-years of age but under 16-years of age.
>
> This is a felony. *The maximum penalty is 15 years in a Michigan State Prison*, . . . mandatory AIDS, STD testing, DNA upon arrest, fines, cost, probation. Do you understand that charge against you, sir?
>
> Lewis: Yes, sir.
>
> Court: How do you wish to plead; guilty, not guilty, no contest?
>
> Lewis: No contest.

Court: Do you understand, sir, that, if the Court accepts your no contest plea, you'll not have a jury trial of any kind and you'll be giving up all the rights you've had at that jury trial?

Lewis: Yes, sir.

Court: You understand those rights are included in this Advice of Rights Circuit Court Plea form that you've signed here today? Do you have any questions for your attorney Mr. Parish concerning any of these rights?

Lewis: No, sir.

Court: You do understand, Mr. Lewis, that, if I accept your no-contest plea, all these rights are gone?

Lewis: I do.

Court: And that's what you want me to do, sir?

Lewis: Yes, sir.

. . .

Court: Do you also understand, Mr. Lewis, that if I accept your no contest plea, you'll be giving up any claim that your plea was a result to any promises, tricks, or threats you don't tell me about right now, and, you'll also be waiving any claim that this was not your decision to plead no contest? In other words, you can't come back on Wednesday and say: I didn't wanna do that on Monday . . . . Do you understand you're waiving, or giving up, any claims like that?

Lewis: Yes, sir.

. . .

Court: Okay, [Defense counsel], please place the plea agreement on the record, sir.

. . .

Defense Counsel: Your Honor, there's a separate file, 2010-003200, set for trial in front of Judge Bruce on a charge of Assault with a

> Dangerous Weapon that is scheduled for March. That case would be dismissed as part of this. Secondly, Count 1 in this case, which alleges Criminal Sexual Conduct in the first-degree, which is a crime punishable by up to . . . life in prison will be dismissed . . . .
>
> Also, Count 3 and Count 4, which both allege Criminal Sexual Conduct in the third-degree . . . are to be dismissed, and he will not be convicted of any of those.
>
> It's also agreed that the Prosecutor will recommend as part [of the] agreement that the Court stay within the sentencing guidelines. And that is the entire agreement, your Honor.
>
> . . .
>
> Court: And, Mr. Lewis, is that your understanding as well, sir?
>
> Lewis: Yes, sir.
>
> . . .
>
> Court: Other than the plea agreement just placed on the record and agreed to by all the parties, has anyone used any other promises, tricks or threats to get you to plead no contest?
>
> Lewis: No, sir.
>
> . . .
>
> Court: Okay, Mr. Lewis, I find, sir, that a sufficient factual basis has been established to support your no contest plea to Count 2. I further find that your plea of no contest has been made knowingly, freely, voluntarily and understandingly, it is offered without duress, compulsion, undue influence or the promise of benefit or leniency and I do accept your no-contest plea.

Docket # 17 at 3-8, 10 (emphasis added). The transcript of Petitioner's plea hearing adequately shows that the plea was made knowingly, voluntarily, and intelligently because Petitioner was made aware of the direct consequences of his plea (that the maximum sentence could be fifteen years). *See Garcia*, 991 F.2d at 326; *see also King*, 17 F.3d at 153-54 (noting a voluntary and

intelligent plea is when a person knows the direct consequences of the plea; i.e., the maximum and minimum (if any) number of years that could be imposed).

Despite the thoroughness of his plea colloquy, Petitioner contends that his plea was not knowingly or intelligently made. Specifically, Petitioner states that because his trial attorney told Petitioner that he would be imprisoned for one to two years if he accepted the plea agreement, and Petitioner was actually sentenced to seven years and one month to fifteen years imprisonment, that his plea should be withdrawn. Docket # 3 at 16. However, attached to his brief, Petitioner included a letter from his trial attorney dated just two days before Petitioner's plea hearing. Docket # 3-1 at 1-5. In this document, Petitioner's trial attorney clearly outlined the plea agreement and potential sentences:

> The offer was as follows:
>
> 1. To drop all the charges (including criminal sexual conduct first degree with [sic] has a life maximum)(also including the assault with a dangerous weapon charge which will be the subject of a separate trial) in return for a conviction of one count of criminal sexual conduct third degree. It would make it possible (but not likely) to get a jail sentence (of not more than one year less good time and less credit for time served). *That is not likely*. It is still likely you would go to prison. If you go to prison, you would have a minimum and maximum. The *minimum would likely be something between one year and two years. The maximum would be set by law at 15 years.* You would still have the problem with the parole board. However, the parole board could not hold you for nearly as long as they could if you were convicted as charged. The net effect would be to save a very large number of years in prison.

Docket # 3-1 at 4 (emphasis added). Clearly, Petitioner's trial attorney told Petitioner that there was a possibility that he could be sentenced to fifteen years in prison, the maximum possible sentence. *Id.* While defense counsel said it was possible to get a one to two year sentence if

Petitioner pleaded guilty or no contest, defense counsel stated that this was not a likely outcome. *Id.* Furthermore, "[a] plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true." *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 2007). Therefore, it is clear that Petitioner knew and was aware of the potential range of sentences that could be imposed if he chose to accept the plea agreement.

Petitioner's next claim is that his defense counsel was ineffective in explaining the crime and potential sentence to Petitioner; thus, Petitioner believes that his plea should be withdrawn. The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner specifically claims that his attorney was ineffective because his trial attorney told Petitioner that Petitioner was pleading guilty to a Class C crime, rather than a Class B crime. Docket # 18 at 6-7. However, Petitioner has not shown that but for this error, he would have insisted on going to trial. All of the evidence demonstrates that it was largely within Petitioner's best interest to accept the plea agreement despite this alleged error. For example, Petitioner's trial attorney believed that accepting the plea agreement was still in Petitioner's best interest since it dismissed all of Petitioner's remaining charges and eliminated the potential for

life in prison. Docket # 18 at 7. Even the trial judge noted that if Petitioner's plea was withdrawn because of this alleged error, the judge "couldn't imagine a more beneficial [plea bargain] to your client [Petitioner]." Docket # 18 at 6. Overall, since Petitioner has not shown that he would have insisted on going to trial but for this error, Petitioner's request to withdraw his plea is denied. *Hill*, 474 U.S. at 59 (noting that the prejudice prong for plea agreements under *Strickland* requires a showing that Petitioner would have gone to trial but for counsel's errors).

**B. Sentence Score**

Petitioner next claims that the trial court erred in refusing to re-score OV 4, 10, and 14. Docket # 3 at 12. Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (stating that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleging violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departing from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969,

977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (noting a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447;*United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485. Petitioner pleaded guilty and was convicted of third degree criminal sexual conduct for raping a female between the ages of

thirteen to sixteen years old. MICH. COMP. LAWS § 750.520(d)(1)(A). At his plea hearing, Petitioner stated on the record that he understood that the maximum possible sentence could be up to "15 years in a Michigan State Prison." Docket # 17 at 5. Based on this knowledge and Petitioner's own acknowledgment of it, the trial judge sentenced Petitioner to eighty-five to one hundred eighty months imprisonment (seven years and one month to fifteen years). Docket # 1 at 1; Docket # 18 at 25. Given the nature of the crime and Petitioner's understanding of the possible sentence during the plea colloquy, Petitioner's sentence is not so disproportionate to the crime that it is arbitrary or shocking. *See Wilson v. Bell*, 368 Fed. App'x 627, 628 (6th Cir. 2010) (noting a sentence of nine to fifteen years imprisonment); *Kue v. Birkett*, No. 2:10-CV-11925, 2013 WL 2155527, at *2 (E.D. Mich. May 17, 2013) (noting a sentence of six to fifteen years imprisonment); *Garrison v. Trombley*, No. 05-74453, 2009 WL 311102, at *5 (E.D. Mich. Feb. 9, 2009) (noting a sentence of five to fifteen years for third degree criminal sexual conduct with a minor).

Moreover, Petitioner does not argue that the facts found and used by the court in determining his sentence were either materially false or that the court based its sentence on false information. Docket # 3 at 25-27; *see Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court's sentencing findings were not sufficiently supported. *See* Docket # 3 at 12-15. For example, Petitioner claims that there was not enough information in the record to score OV 4 (addressing the degree of the victim's psychological injury) at ten, and that the trial judge improperly scored him at ten because he was biased against Petitioner. Docket # 3 at 12. However, the presentence report scored OV 4 at ten because the youth victim would likely need psychological counseling in the future for having been raped by Petitioner for several of her

teenage years. Docket # 3 at 12-13. Thus, there was evidence and support for the trial judge to score OV 4 at ten. As such, this claim, and others like it, clearly falls far short of the sort of egregious circumstances implicating due process. Because the state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent, Petitioner's claim fails. 28 U.S.C. § 2254(d).

III.

This Court concludes that all of Petitioner's claims are without merit. Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, this Court denies a certificate of appealability as to each issue raised by Petitioner.

For the same reasons the Court dismissed this action, the Court will certify that any appeal by Petitioner from the Court's decision and judgment would be frivolous and not

taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

In summary, Petitioner's motion for post-conviction relief (Docket # 1) pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**. A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED**.

___/s/ R. Allan Edgar________________
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE

Dated: 8/26/2015